UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLEN HAMMLER,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>HAAS, et al.,<br><br>　　　　　Defendants. | No. 2:15-cv-2266 JAM AC P<br><br>FINDINGS AND RECOMMENDATIONS |

**I.　Introduction**

Plaintiff Allen Hammler is a state prisoner currently incarcerated at California State Prison Corcoran (CSP-COR), under the authority of the California Department of Corrections and Rehabilitation (CDCR). Plaintiff proceeds pro se and in forma pauperis with this civil rights action filed pursuant to 42 U.S.C. § 1983. This case proceeds on plaintiff's First Amended Complaint (FAC) on claims that, during plaintiff's prior incarceration at High Desert State Prison (HDSP), defendant Correctional Officers Haas and Louie were deliberately indifferent to plaintiff's health and safety in violation of the Eighth Amendment when they failed to protect plaintiff from assault by other inmates. See ECF No. 12.

Presently pending for decision is a motion for summary judgment filed by defendant Haas. ECF No. 42. Defendant Louie has not filed a dispositive motion. This matter is referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local

1

Rule 302(c). For the reasons that follow, this court recommends that defendant Haas' motion for summary judgment be denied, and this action proceed to trial on plaintiff's Eighth Amendment claims against both defendant Haas and defendant Louie.

## II. Background

By order filed March 9, 2017, the court granted plaintiff's request to proceed in forma pauperis and found that the FAC (ECF No. 12) states cognizable Eighth Amendment claims against defendants Haas and Louie. ECF No. 17. As summarized by the court on screening pursuant to 28 U.S.C. § 1915A, the FAC presents the following facts:

> Plaintiff alleges that on March 16, 2015, when he was returning to his B-2 Housing Unit from CTC Medical, inmates Mitchell and Johnson attempted to physically attack him and, with a third inmate, ran after him. The inmates stopped when ordered from the observation tower, "No running on the track." ECF No. 12 at 8. Plaintiff returned to his cell where he told his cellmate (Alford) about the encounter. At "Close-A count," plaintiff told C/O Hass about the event and opined that Hass had probably seen the encounter from the observation tower and that perhaps he and other officers had instigated it. Shortly thereafter, plaintiff was ordered by C/O Louie, and then via the P.A. System, to report to the Program Office for a urine test. Plaintiff told C/O Louie why he did not want to go back in the yard, but was informed that his refusal would result in a disciplinary citation. Plaintiff decided to go but "in exiting his cell to report to Program was not escorted by Haas, Louie, or any other officer the danger having been made known to staff. Nor was the Observation Tower alerted that the Posted C/O should keep any eye on [plaintiff] along the way." Id. at 10.
>
> ["Alone, plaintiff was again][1] . . . accosted by a number of yard crew workers who corralled him by blocking his way, causing him to change his course" until confronted by "one" (identified in the exhibits as inmate Mitchell) who threw coffee on plaintiff's bare chest. The two engaged in a physical altercation resulting in plaintiff being "bloodied, bruised, and scarred for life, having been taken to the ground 'slammed' hard in the gravel atop the sharp rocks while attempting to flee[.]" Id. at 10. Plaintiff suffered cracked ribs, swelling and pain in his face, injury to his chest resulting in a "clicking and or sucking sound," and mental and emotional distress. Id. at 11. Plaintiff received a Rules Violation Report (RVR) for the altercation.

ECF No. 17 at 7-8 (fn. omitted).

---

[1] The court previously inferred, incorrectly, that plaintiff was assaulted "[o]n his way to the Program Office." See ECF No. 17 at 8 (citing FAC, ECF No. 12 at 10). As explained below, plaintiff was not assaulted on his way to the Program Office but on his way back.

2

Defendants, who are represented by separate counsel, filed separate answers to the FAC. ECF Nos. 25, 30. The court issued a Discovery and Scheduling Order on August 11, 2017. ECF No. 33. Discovery closed on December 15, 2017. Id.

Defendant Haas filed the pending motion for summary judgment on April 13, 2018. ECF No. 42. Plaintiff filed an opposition, ECF No. 48; defendant filed a reply, ECF No. 49. Plaintiff was granted leave to file a sur-reply, ECF No. 57, which he filed in two parts, ECF Nos. 51 & 55. The substance of defendant Haas' oppositions thereto, ECF Nos. 52 & 56, have also been considered. See ECF No. 57.

### III. Legal Standards for Motions for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Securities Litigation), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment ... is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. Moreover, "[a] [p]laintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence." Lopez v. Smith, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc).[2]

The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual

---

[2] In addition, in considering a dispositive motion or opposition thereto in the case of a pro se plaintiff, the court does not require formal authentication of the exhibits attached to plaintiff's verified complaint or opposition. See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) (evidence which could be made admissible at trial may be considered on summary judgment); see also Aholelei v. Hawaii Dept. of Public Safety, 220 Fed. Appx. 670, 672 (9th Cir. 2007) (district court abused its discretion in not considering plaintiff's evidence at summary judgment, "which consisted primarily of litigation and administrative documents involving another prison and letters from other prisoners" which evidence could be made admissible at trial through the other inmates' testimony at trial); see Ninth Circuit Rule 36-3 (unpublished Ninth Circuit decisions may be cited not for precedent but to indicate how the Court of Appeals may apply existing precedent).

dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011) (per curiam). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. … Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

In applying these rules, district courts must "construe liberally motion papers and pleadings filed by pro se inmates and … avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). However, "[if] a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . ." Fed. R. Civ. P. 56(e)(2).

**IV.    Undisputed Facts**

For purposes of summary judgment, the following facts are undisputed by the parties or as determined by the court.[3]

- On March 16, 2015, while housed at High Desert State Prison and returning to his B-2 Housing Unit following a medical appointment, plaintiff was confronted by inmates

---

[3] Plaintiff states that "the material facts [as presented by defendant] are agreed upon by both sides," and that the "only issue" is whether defendant Haas had a duty to protect plaintiff when advised of plaintiff's concerns. ECF No. 55 at 1-2.

Mitchell and Johnson who attempted to physically attack him and, with a third inmate, ran after plaintiff. The inmates stopped when ordered from the observation tower, "No running on the track." ECF No. 12 (FAC) at ¶7; see also Plaintiff's Deposition ("Pltf. Depo.") 29:5-7; 31:17-32:7; 37:5-15; 39:20-1 ("No running on the yard.") (Ex. B to Stocker Declaration). Plaintiff was not hit at that time. Pltf. Depo. 38:13-21.

• Shortly thereafter, at the noon "Close-A count," plaintiff told defendants Haas and Louie what had occurred. When Haas left to finish the count, Louie informed plaintiff that he needed to go to the Program Office for a random urinalysis. Plaintiff told Louie he didn't want to go back out because of what had just occurred ("I was expressing to him my fear of becoming involved in a physical altercation."). Louie informed plaintiff, "You have to go. If you don't, you're going to get a 115 [Rules Violation Report]." ECF No. 12 at ¶8; Pltf. Depo. 42:2-21; 44:2-17; 45:1-20; 46:17-23; 47:1-11; 73:8-18; 136:19-24.

• At about 12:15 p.m., it was announced over the PA system that plaintiff should report to the Program Office for a urinalysis, and plaintiff's cell door opened. Two or three minutes later, it was announced over the PA system that inmate yard crew members were to return to work. Officers Haas and Louie approached plaintiff's cell. Haas asked plaintiff, "Hey, are you going or what? Are you going to let them give you the 115?" Plaintiff said he was going but told defendants, "You guys are in a hurry to crash me." Pltf. Depo. 48:1 – 49:3; 50:1-20.

• Plaintiff testified that "in exiting his cell to report to Program [he] was not escorted by Haas, Louie, or any other officer the danger having been made known to staff." ECF No. 12 at ¶10; Pltf. Depo. 61:21-62:2 ("They should have never let me go outside of the building by myself. I should have been escorted or the tower should have been notified that they could keep an eye on me to prevent my being assaulted further.").

• Plaintiff was not physically attacked by anyone on his way to the Program Office. Pltf. Depo. 50:21-51:2; 134:17-19; 136:22-24. However, plaintiff testified that "Mitchell, Johnson . . . and "a bunch of other yard crew workers were standing by the basketball court . . . saying things like, 'We're going to get you,' and things of that nature. And I

6

continue to walk to the program office. I go inside the program office, I do my UA." Id. at 51:17-25; see also id. at 134:4-22.

• There were several officers in the Program Office when plaintiff was there. Pltf. Depo. 135:4-17. Plaintiff did not tell any of the officers that he was worried about being assaulted on the way back to his housing unit. Pltf. Depo. 135:18-136:3, 136:19-137:3. Plaintiff testified: "I was worried. But officers, as I said, stood by and watched prior to my going there. What sense would it make to keep on, 'Hey, help me. Help me,' when they're constantly ignoring things." Id. at 135:25- 136:3.

• After plaintiff left the Program Office, he was attacked by Mitchell while surrounded by other yard crew members. ECF No. 12 at ¶11; Pltf. Depo. 51:25-53:4.

• Plaintiff was found guilty of an RVR related to the incident. Pltf. Depo. 60:9-17; RVR (Ex. C to Stocker Decl.).

### V. Legal Standards for "Failure to Protect" Claims

Under the Eighth Amendment, prison officials must "take reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984); see also DeShaney v. Winnebago County, 489 U.S. 189, 199-200 (989) ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."). This responsibility requires prison officials to protect prisoners from injury by other prisoners. Farmer v. Brennan, 511 U.S. 825, 833-34 (1994).

Because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," evidence must exist to show that the defendant acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 297 (1991) (internal quotation marks, emphasis and citations omitted). A failure to protect claim under the Eighth Amendment requires a showing that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety." Farmer, 511 U.S. at 837. Whether a defendant had requisite knowledge of a substantial risk of

harm is a question of fact. "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. The inference of knowledge from an obvious risk has been described by the Supreme Court as a rebuttable presumption, and thus prison officials bear the burden of proving ignorance of an obvious risk. . . . [D]efendants cannot escape liability by virtue of their having turned a blind eye to facts or inferences strongly suspected to be true . . . ." Coleman v. Wilson, 912 F. Supp. 1282, 1316 (E.D. Cal. 1995) (citing Farmer, 511 U.S. at 842-43) (internal quotation marks omitted).

When the risk is not obvious, the requisite knowledge may still be inferred by evidence showing that the defendant refused to verify underlying facts or declined to confirm inferences that he strongly suspected to be true. Farmer, 511 U.S. at 842. Prisons officials may avoid liability by demonstrating "that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Id. at 844. Thus, liability may be avoided by presenting evidence that the defendant lacked knowledge of the risk and/or that his response was reasonable in light of all the circumstances. Id. at 844-45; see also Wilson, 501 U.S. at 298; Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010).

### VI. The Parties' Arguments

Defendant Haas contends he is entitled to summary judgment because "[p]laintiff cannot establish as a matter of law that his injuries were proximately caused by defendant Haas' deliberate actions. Plaintiff has asserted only conclusory allegations in support of his failure to protect theory and cannot show that defendant proximately caused his injuries, if any." ECF No. 42 at 6; see also ECF No. 49 at 4. Defendant argues: "Mr. Hammler expressed concern to defendant Haas about what might happen to him on the way to the Program Office. Nothing happened. It was not until plaintiff left the Program Office, without expressing any concerns to the officers there, that he was allegedly assaulted by another inmate." ECF No. 42 at 6.

Plaintiff responds: "Defense counsel attempts to make a Big Deal out of the fact that nothing occurred on the way *to* the Program Office, and . . . argu[es] that plaintiff told Haas that

he was worried about being assaulted *'on the way' to* the Program Office and insists that since plaintiff was attacked on the way *back* from the Program Office Haas is not liable." ECF No. 48 at 4 (emphasis added). Plaintiff argues that the factual record does not support defendant's limited characterization of plaintiff's concerns; that "nowhere in the complaint or any other of [plaintiff's] submissions is it alleged that plaintiff told Haas that he was 'worried about being assaulted [only] on the way *to* the Program Office.'" Id. at 4-5 (emphasis added). Plaintiff cites numerous CDCR regulations to support his argument that, upon plaintiff notifying defendants of his safety concerns, they both had an affirmative obligation to protect plaintiff which neither met.

### VII. Analysis

To survive Haas' motion for summary judgment, plaintiff must demonstrate genuine issues of material fact as to (1) whether defendant acted with deliberate indifference and, if so, (2) whether such conduct was the "actual and proximate cause" of plaintiff's assault by another inmate. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988). "Sweeping conclusory allegations will not suffice to prevent summary judgment. The prisoner must set forth specific facts as to each individual defendant's [alleged] deliberate indifference." Id. at 634 (citation omitted). The court "must focus on whether the individual defendant was in a position to take steps to avert the [challenged] incident, but failed to do so intentionally or with deliberate indifference. In order to resolve this causation issue, [the court] must take a very individualized approach which accounts for the duties, discretion, and means of each defendant. . . to establish individual fault." Id. at 633-34.

Defendant does not dispute plaintiff's evidence that he informed Haas of his safety concerns related to crossing the yard; that defendant Haas provided plaintiff no protection; and that shortly thereafter, while on the yard, plaintiff was attacked by another inmate. This evidence is sufficiently specific and individualized as to defendant Haas, and supports both the objective and subjective elements of plaintiff's failure-to-protect claim. See Farmer, 511 U.S. at 837. Accordingly, whether Haas (1) knew of and (2) disregarded a significant risk to plaintiff's safety are questions appropriate to present to a jury.

Plaintiff need not show that Haas intended plaintiff be harmed. "'[I]t is enough that the

official acted or failed to act despite his knowledge of a substantial risk of harm.'" Lemire v. CDCR, 726 F.3d 1062, 1074 (9th Cir. 2013) (quoting Farmer, 511 U.S. at 837, 842)). A prison official may not "escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault." Farmer, 511 U.S. at 843. Stated differently, the deliberate indifference standard "does not require that the guard or official believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before that officer is obligated to take steps to prevent such an assault." Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986) (citations and internal quotation marks omitted).

Subject to these standards, and for purposes of summary judgment, the undersigned finds that the evidence would permit a jury to infer that defendant Haas was deliberately indifferent to plaintiff's safety.

Haas does not argue to the contrary. Rather, he contends that plaintiff's evidence fails to demonstrate that his conduct was the "actual and proximate cause" of plaintiff's assault. To prevail on his failure-to-protect claim, plaintiff must demonstrate both that (1) Haas' challenged conduct was deliberately indifferent, and (2) "that this indifference was the actual and proximate cause of the deprivation of [plaintiff's] eighth amendment right to be free from cruel and unusual punishment." Leer, 844 F.2d at 634 (citations omitted). Thus, plaintiff can defeat Haas' motion for summary judgment by demonstrating that there remain material issues of fact concerning causation.

If an injury would not have occurred "but for" specifically-challenged conduct, that conduct is deemed an "actual cause" of the injury. White v. Roper, 901 F.2d 1501, 1505 (9th Cir. 1990) (citing W. Prosser & W. Keeton, The Law of Torts § 41, at 266 (5th ed. 1984)). If there is more than one "actual cause" for the injury, the "proximate cause" will be the legally responsible cause. White, 901 F.2d at 1506 (citing Prosser, § 42 at 272-73). A defendant's conduct is not the proximate cause of plaintiff's injuries "if another cause intervene[d] and supersede[d] his liability for the subsequent events." White, 901 F.2d at 1506 (citing Restatement (Second) of Torts §§

440–53 (1965)). "A requirement of proximate cause thus serves . . . to preclude liability in situations where the causal link between conduct and result is so attenuated that the consequence is more aptly described as mere fortuity." Paroline v. United States, 572 U.S. 464, 445 (2014) (citation omitted).

"The proximate cause question asks whether the unlawful conduct is closely enough tied to the injury that it makes sense to hold the defendant legally responsible for the injury. Proximate cause is said to depend on whether the conduct has been so significant and important a cause that the defendant should be legally responsible. It is a question of whether the duty includes protection against such consequences. . . . [w]hether understood in terms of the scope of the risk or in terms of foreseeability." Mendez v. County of Los Angeles, 897 F.3d 1067, 1076-77 (9th Cir. 2018) (citations and internal quotation marks omitted).

The parties dispute whether the assault on plaintiff was a reasonably foreseeable result of Haas' conduct. Although Haas appears to concede, at least for purposes of summary judgment, that his conduct might have been considered the proximate cause of plaintiff's injuries had he been attacked while walking *to* the Program Office, liability for an assault while walking back *from* the Program Office is superseded by plaintiff's narrow expression of his safety concerns as related solely to the former walk. Haas further implies that plaintiff's uneventful walk *to* the Program Office, and failure to inform any of the officials at the Program Office of his safety concerns before returning to his housing unit, collectively defeat any theory of causation.

The record does not support Haas' limited view of plaintiff's expressed safety concerns. Plaintiff accurately points to evidence that the safety concerns he expressed to Haas encompassed any need to be on the yard, particularly while inmate yard crew members were present. Defendant's citations to plaintiff's deposition, see ECF No. 49 at 3-4, are unavailing; these citations reflect the framing of defense counsel's questions rather than plaintiff's testimony, and neither can reasonably be construed to limit plaintiff's safety concerns to his walk to the Program Office. See Plaintiff's Depo. 73:8-18; 136:19-24.

The undersigned finds that there is material factual dispute whether defendant Haas' failure to act proximately caused plaintiff's assault. "'Causation is generally a question of fact for

the jury, unless the proof is insufficient to raise a reasonable inference that the act complained of was the proximate cause of the injury.'" Prosser v. Crystal Viking F/V, 940 F.2d 1535 (9th Cir. 1991) (quoting Lies v. Farrell Lines, Inc., 641 F.2d 765, 770 (9th Cir. 1981) (internal quotation marks omitted)). "[A]lthough the question of proximate causation in a section 1983 action is sometimes for the court and sometimes for the jury, the court decides whether reasonable disagreement on the issue is tenable." Van Ort v. Estate of Stanewich, 92 F.3d 831, 837 (9th Cir. 1996) (citing Springer v. Seaman, 821 F.2d 871, 876-77 (1st Cir. 1987)). The undersigned finds that reasonable disagreement is tenable in this case.

For these reasons, Haas' motion for summary judgment should be denied.

**VIII.       Conclusion**

Accordingly, for the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Defendant Haas' motion for summary judgment, ECF No. 42, be denied; and

2. This action proceed to trial on plaintiff's Eighth Amendment failure-to-protect claims against both defendant Haas and defendant Louie.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 14, 2018

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE